COMMERCIAL STANDARD INS. CO. et al. v. SUTTLE et al.

No. 32903.    May 11, 1948.

*193 P. 2d 563.*

322

John B. Dudley, Jr., and Duke Duvall, both of Oklahoma City, for plaintiffs in error.

Monnet, Hayes, & Brown, of Oklahoma City, for defendants in error.

LUTTRELL, J. This is an action brought to recover premiums paid for workmen's compensation and employers' liability insurance policies issued by the defendant, Commercial Standard Insurance Company, to A. Ben Chadwell, who was one of the copartners of the firm of Suttle & Chadwell, plaintiffs herein. The other defendants are Oklahoma agents for the insurance company.

From the record it appears that in 1942 the plaintiff partnership secured a contract from the United States government for the construction of an air base at Pratt, Kan. During the performance of the work under this contract differences arose between the partners and also between one of the partners, Suttle, and the United States engineers, by reason of which Suttle was deprived of any control over the work, and it was carried on under the supervision of Chadwell.

Later in the year 1942 two other contracts embracing additional construction work at the air base were awarded to the partnership. When these latter contracts were awarded, Chadwell, who was in active charge of the operations of the partnership in Kansas, communicated with Mr. Carroll M. Johnston, the Oklahoma agent for the defendant company, and, by an arrangement between them the defendant company made the performance bond required by the government engineers, and also wrote the policies for public liability and workmen's compensation for the additional contracts. The bond was written in the name of Suttle & Chadwell but provided for execution by the partnership by Chadwell only, and the insurance policies were both made to Chadwell individually. The bond was rejected by the United States engineers, and a new bond to be executed by both partners was substituted therefor. The insurance policies were never changed.

At the time the insurance policies were written, Johnston, the Oklahoma agent, was advised that the contracts were let or would be let in the name of the partnership, although Chadwell was trying to get them changed and made to him inidividually. He was also advised that the operations were being conducted by the partnership with Chadwell as the managing partner, and that by contract between Chadwell and Suttle the latter was to receive only 10 per cent of the profits under the two contracts for additional construction. Johnston advised Chadwell that on account of a previous experience with Suttle, his company would not issue an insurance policy covering Suttle, and that he would make the policies to Chadwell as the assured.

At the time the policies were made, it appears that Maryland Casualty Company had issued to the partnership public liability and workmen's compensation policies covering all the operations of the partnership in Kansas. At the time he dealt with Johnston, Chadwell advised Johnston that these policies covered only the first or main contract, and did not cover the two latter contracts. However, Johnston, sometime in January, 1943, ascertained that the Maryland policies covered all the operations of the partnership, and suggested to Chadwell that he write the Maryland Company and have it place endorsements on its policies excluding the latter contracts from the coverage. Chadwell testified that he orally advised the agent of Maryland that he had procured insurance on the latter contracts from the defendant, and requested him to limit the Maryland insurance. This was never done, and after the completion of the work, Maryland, by an action in the federal court, recovered premiums for the insurance carried by it under its policies on the two latter contracts. Thereupon the plaintiff partnership brought this action.

At the conclusion of all the evidence the trial court rendered judgment for plaintiffs. Defendants appeal.

We have recited the facts with reference to Maryland Casualty Company as a part of the history of the case, and not as having any controlling effect on our decision. The only question for determination is, did any risk attach under the policies of the defendant?

The parties agree that if any risk under the policies was incurred by defendant, plaintiffs are not entitled to a return of the premiums. This is the general rule. 32 C.J. p. 1234, §407; 44 C.J.S. p. 1387, §405.

Defendants contend that risk attached, and that the policies, regardless of the fact that they were issued to A. Ben Chadwell, an individual, were binding, and that the company would have been required to pay any losses incurred by the partnership which purported to be covered by the policies. They urge that under the circumstances surrounding the execution of the policies, the company would have been obligated, either by estoppel, or by way of reformation of the policies, to pay any loss. In support of this contention they rely upon Tri-State Casualty Co. v. Bowen, 189 Okla. 97, 113 P. 2d 981; Employer's Liability Assurance Corp. v. Showalter, 175 Okla. 286, 52 P. 2d 1060, and similar cases. In these cases, however, it appears that after the policies were written a change occurred in the status of the insured, in the Tri-State case, by the formation of a corporation which succeeded to the rights of a copartnership, and in the Showalter case by the purchase of the interest of the other partners by one partner. It further appears that in each case the agent of the insurance company was notified of this change in status and continued to accept premiums and gave no notice of cancellation. We held in those cases that under the circumstances the insurance companies were estopped, when a loss occurred, to contest the binding effect of the policies because of such change of status of the insured.

We consider those cases inapplicable and not controlling, for the reason that in the instant case, the agent of defendant, with full knowledge of all the facts, refused to write the policies to cover the partnership but insisted on covering the liability of only one of the partners, Chadwell. The agent testified that he figured that Chadwell had, at least in substance, taken the contracts individually, and that he wanted and intended to cover Chadwell so far as he was operating those jobs. Thus it is clear that at the outset there was a plain and unqualified refusal by the duly authorized agent of defendant company to insure the partnership operations, and pursuant to that purpose the policies were knowingly made out in the name of one partner for the purpose of covering only the liability of such partner, as to employees, employed by him as an individual. In the Bowen and Showalter cases cited and relied upon by defendant, the circumstances were such as to justify the court in holding that the insurance company assented to the change in the status of the insured, and agreed that the policy would protect it in such changed status. In the instant case there are no facts or circumstances from which such an inference can be drawn.

We have heretofore held that where the parties know all the facts, any misconstruction of the legal effect of such facts cannot become the basis of an estoppel for one against the other. Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okla. 203, 62 P. 2d 249. The rule announced in that case applies to the instant case, since here all the facts were known to the parties, but apparently they misconstrued the legal effect of the issuance of the policies to Chadwell alone. Chadwell paid the premiums out of the partnership funds, believing that as a matter of law the partnership operations were protected by the policies, although they were issued to him alone. In such case the defendant company would not be estopped to assert nonliability to the partnership under the policies, under

the rule announced in the last-cited case.

Defendants also contend that in case of a loss the policies could have been reformed, but the record discloses no evidence of any fraud, mutual mistake or other ground of reformation unless it be a pure mistake of law.

In Barnett v. Douglas, 102 Okla. 85, 226 P. 1035, 39 A.L.R. 188, we held that a mere mistake of law not accompanied by other circumstances demanding equitable relief constituted no grounds for reformation. In that case we defined a mistake of law as follows:

"A 'mistake of law' happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference arising from an imperfect or incorrect exercise of the judgment upon the facts as they really are."

That case was cited with approval and followed in Page v. Provines, 179 Okla. 391, 66 P. 2d 7.

Since, as above stated, it is clear that the only misconception of the parties was as to the legal effect of the issuance of the policies to Chadwell alone, there would have been no ground for the reformation of the policies to extend the liability of the defendant company thereunder to the partnership.

In the instant case it is undisputed that Chadwell, the managing partner, paid the premiums on the policies out of the partnership funds in the mistaken belief that the policies covered the partnership operations. In such case the partnership was entitled to recover the premiums so paid.

A case somewhat similar to the instant case is that of Bituminous Casualty Exchange v. Ford Elkhorn Coal Co., 243 Ky. 456, 48 S.W. 2d 1057. In that case the plaintiff, while operating a coal mine, obtained employers' liability insurance from the defendant insurance company. Shortly after the insurance was effected plaintiff leased the coal mine to a lessee, but continued to pay the premiums on the insurance policy under the mistaken belief that such policy would cover the employers of the lessee. Upon discovery that lessee's employees were not protected by the insurance, the plaintiff demanded return of the premiums, and upon the insurance company's refusal to repay brought suit to recover. Plaintiff recovered judgment in the lower court, and on appeal the Court of Appeals of Kentucky, in affirming the judgment, said:

"The rule in equity is that the court will not reform and specifically enforce a contract for mistake unless the mistake is mutual. The same rule is some times applied in equity where a contract has been executed and rescission is sought on the ground of mistake. See 21 C.J. p. 87, sec. 63, and cases cited. But that rule has no application to money paid by mistake without consideration. In Supreme Council v. Fenwick, 169 Ky. 269, 183 S.W. 906, 910, following a long line of cases, the rule in a case of this kind is thus stated: 'It is the settled rule of this state, adopted at an early date and followed by a long line of decisions, that whenever by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consideration, which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it may and ought to be recovered'."

We think the rule of law stated in the Kentucky case applicable to the instant case, and that plaintiffs, in fact receiving no consideration for the premiums paid, were entitled to recover them.

Affirmed.

HURST, C.J., and WELCH, CORN, and GIBSON, JJ., concur.